## HALL *et als. v.* DAVIS.

In the description of a line, what is most material and certain controls what is less material and uncertain. Boundaries marked on the land govern courses and distances. If the plan, or the line, described in a deed or charter, and the monuments made by an original survey of a tract or township of land, do not correspond, the monuments determine the true location; and the marks on the ground of an old survey, indicating the lines originally run, are the best evidence of the true location of that survey.

Where land is conveyed by a deed referring to a plan or to a charter line, between which and the actual original survey, as shown by fixed monuments upon the ground, there is a difference in the courses and distances, or in the location of lines and monuments, the lines and monuments, as originally located and marked on the ground, are to govern, however they may differ from those represented on the plan, or described in the charter.

No parol evidence of the understanding or intention of the parties can control the well settled construction and legal effect of the clear language of a deed; but, if that language contain a latent ambiguity, so that it may be applicable to several persons, to several parcels of land, to several species of goods, to several monuments, boundaries or lines; or, if the terms employed be vague and general, or susceptible of divers meanings, parol evidence is admissible of any extrinsic circumstances tending to show what persons or things were intended, or the true meaning of the terms used.

It is not improper for a witness to state that, among other indications of the existence of an established line, he noticed a ridge of land apparently marking the interval between the occupation for tillage or other purposes, on the one side and the other; what such ridge indicates, being almost as much a matter of fact and observation on the ground, as its existence.

WRIT OF ENTRY, for a tract of land in Manchester, described in part as bounded by "Derry old line." The case was tried upon the general issue. The plaintiffs introduced as evidence a copy of the charter of Londonderry, bearing date of 1792, in which said line was described as running from a certain monument north north-east, three miles. They also introduced a plan of Londonderry, admitted to be genuine, in which the same line is described as running from a tree, known as the Griffin tree, admitted to be the one shown to the jury on their view in this case, thence north north-east, three miles, to a red oak, marked, &c.

The plaintiff offered evidence, by the declarations of owners

of land by said line, tending to show that a pine tree which formerly stood at a certain point 919 rods about north north easterly of said Griffin tree, was the true terminus of said line, and contended that the defendant could not be allowed to prove that said line was not a straight line.

The defendant contended that the said pine was not at said terminus, nor upon the Derry old line; it being neither in the course described in the charter and plan, nor at the distance named from said Griffin tree, and offered evidence tending to show that there are now standing ancient monuments at several points along the general course of said line, which were shown to the jury, and which the defendant contends made the "old Derry line," as originally located.

Judge Stark, who was called as a witness for the plaintiff, testified, on cross-examination by the defendant, that he had, as a surveyor, run many lots on and near said "old Derry line," and described the bounds which had been shown the jury as they appeared when he first saw them, and stated that the wood was cut off up to certain lines which he described.

He was inquired of by the defendant whether he saw a line visible on the land, near the premises in dispute, and where the defendant claims that the old Derry line was located, and said that he did see a ridge showing the line of occupation, being the same shown to the jury. To this inquiry and answer as to the line, the plaintiff objected, and the court overruled the objection, and the plaintiff excepted.

The plaintiff claims under a deed from Jane Young, and in the deed by which she derived title the disputed line is described as north 19½ east by said "Derry old line."

The court ruled—

*First*—That if Derry line, described as straight in the charter, was in fact located and marked by monuments by parties to the charter, such location will govern, and is the true line, though the line as located is not straight.

*Second*—If the descriptions in the deeds under which both parties claim title were understood by the parties to refer to

" Derry old line," as a known located line, marked by monuments, such located line defines their grants, whether it was or was not the true line of Derry.

A verdict having been returned for the defendant under these rulings, it was ordered that the questions arising upon the case be transferred to the Supreme Judicial Court for determination.

*Morrison & Stanley,* and *Wm. Stark,* for the plaintiffs.

*Clark & Smith,* for the defendant.

FOWLER, J. The first position ruled by the court below was in strict accordance with the general principle repeatedly recognized in this State, that, in the description of a line, what is most material and certain shall control that which is less material and uncertain; that boundaries marked on the land, as being most material and certain, are to govern courses and distances; that if the plan, or the line described in a deed or charter, and the monuments made by an orginal survey of a tract or township of land, do not correspond, the monuments are always to determine the true location, and that the marks on the ground, of an old survey, indicating the lines originally run, are the best evidence of the true location of that survey. *Bowman* v. *Farmer,* 8 N. H. 402; *Griffin* v. *Bixby & al.,* 12 N. H. 454; *Hanson* v. *Russell,* 28 N. H. (8 Foster) 111; *Day* v. *Enfield,* 11 N. H. 525; *Prescott* v. *Hawkins,* 12 N. H. 267, and many other cases.

The same general rule has often been recognized in other jurisdictions, and it may be regarded as well settled, that where land is conveyed by a deed referring to a plan or to a charter line, between which and the actual original survey, as shown by fixed monuments upon the ground, there is a difference in the courses and distances, or in the location of lines and monuments, the lines and monuments, as originally located and marked on the ground, are to govern, however they may differ from those represented on the plan, or described in the charter. *Kellogg* v. *Smith & als.,* 7 Cushing 375; *Missouri* v. *Iowa,* 7 Howard 660; *Ripley* v. *Berry,* 5 Greenl. 24; *Brown* v. *Gay,* 3 Greenl. 126;

*Esmond* v. *Tarbox*, 7 Greenl. 61; *Blasdell* v. *Bissell*, 6 Barr 258; *Thompson* v. *McFarland*, 6 Barr 478; *Cox* v. *Couch*, 8 Barr 147; *Mills* v. *Buchanan*, 14 Pa. State (2 Harris) 59; *Gratz* v. *Hoover*, 16 Pa. (4 Harris) 232. See, also, 1 U. S. Dig., Boundaries, I. and II., secs. 1–99.

To the second ruling of the court below, rightly understood, we can discover no valid objection, although it was apparently unnecessary, save to meet an assumption of the plaintiffs. The located line would seem very clearly to have been the true original line of Londonderry; and if it were so, whether the parties understood the deed to refer to " Derry old line," as a located line or not, was wholly immaterial, unless the language of the deed contained a latent ambiguity; for that language having named " Derry old line" as the boundary of the lot, when "Derry old line," or the original line of Londonderry, was shown to be an actually located line, that located line must be the boundary of the parties, whatever their understanding or intention might have been. No parol evidence of the understanding or intention of the parties could be received to control the well settled construction and legal effect of the language of the deed itself, unless it contained some latent ambiguity. Such construction is to be given to every instrument as will carry out the intention of the parties, whenever it is legally possible, consistently with the language of the instrument itself. *Chamberlain* v. *Crane*, 1 N. H. 64.

In the present case, the language of the deed was, " Derry old line." If these words naturally and necessarily meant the true, original line of Londonderry, whenever it was shown that such a known located line existed, the legal construction of the language of the deed would make it the boundary, such located line being legally the true original line of Londonderry, without regard to the actual intention of the parties. But if it appeared, as the plaintiffs by their evidence attempted to show in this case, that a certain located line was not the true original line of Londonderry, although called " Derry old line," then the expression, " Derry old line," might well be regarded as so ambiguous as to

admit of parol testimony to prove what line was intended to be designated thereby, in which case it would be clearly competent for the parties to show how they understood and with what particular meaning the expression was used. *Hanson* v. *Russell*, 28 N. H. (8 Foster) 111. All, therefore, which the court can be understood to have intended by their second ruling is, that if " Derry old line," as located, had been shown, as the plaintiffs contended the fact to be, not to have been the true original line of Londonderry, then it was competent for the jury to consider and find, from the evidence before them, what line was understood and intended, by the parties to the deed, to be designated by that expression ; and if they found it to have indicated a certain located line, marked by monuments, other than the true original line of Londonderry, but known as " Derry old line," the intention of the parties should govern. In other words, the court intended to rule, that if the " Derry old line" proved by the defendant, were not, as the plaintiffs contended it could not be, the true original line of Londonderry, but a certain located line marked by monuments, and known by that name, then the language of the deed was so ambiguous that parol testimony might be introduced and considered to determine what line was intended by it.

As all written instruments are to be interpreted according to their subject matter, and such construction given to them as will carry out the intention of the parties, whenever it is legally possible to do so, consistently with the language of the instruments themselves, parol or verbal testimony may be resorted to, to ascertain the nature and qualities of the subject matter of those instruments, to explain the circumstances surrounding the parties, and to explain the instruments themselves by showing the situation of the parties in all their relations to persons and things around them. Thus, if the language of the instrument is applicable to several persons, to several parcels of land, to several species of goods, to several monuments, boundaries or lines, to several writings, or the terms be vague and general, or have divers meanings, in all these and the like cases parol evidence is admissi-

ble of any extrinsic circumstances tending to show what person or persons, or what things, were intended by the party, or to ascertain his meaning in any other respect; and this without any infringement of the general rule, which only excludes parol evidence of other language, declaring the meaning of the parties, than that which is contained in the instrument itself.    1 Greenl. Ev., secs. 286, 287, 288, and authorities cited.    *Chamberlain* v. *Crane,* 1 N. H. 64.

The second ruling of the court below is perfectly consistent with this general rule.    The language of the deed, " Derry old line," was susceptible of various meanings, as the original line of Londonderry, or any other line marked by monuments and called by that name.    It was, therefore, entirely competent to show what line was intended by this phraseology, by having the location of the land to which it was a boundary, and the understanding of the parties themselves as to the line actually designed to be designated by the terms employed by them.

We do not perceive any valid objection to the question and answer of the witness in regard to the visible marks of an existing line near the premises in dispute, to which exception was taken by the plaintiffs.    It was proper for the witness to be asked, and to state, what indications of a marked line he noticed at the point in controversy; whether those indications consisted of spotted trees, walls, fences, or a ridge of land apparently marking the interval between the occupation for tillage on the one side and the other.    The jury, composed as a large majority of it undoubtedly was, of practical farmers, could hardly fail to understand the witness correctly, or to appreciate the weight and importance of his testimony in this particular.

Nor is there any just exception to the answer as giving the opinion of the witness, when he describes the ridge which attracted his attention, as showing the line of occupation on the one side and the other.    From the nature of the case, it was almost as much a matter of fact and observation upon the ground, whether this ridge indicated the line of occupation, as whether it existed at all; and as the jury had themselves viewed the premises,

there could be hardly a possibility that the testimony could have misled them, or in any way injuriously have operated against the plaintiffs' interests. After the view there would seem to have been little occasion to offer the evidence to which exception was taken, but as it was competent, the defendant had a right to its admission, if he deemed it material.

As the rulings and instructions of the court below were correct, or at least sufficiently favorable to the plaintiffs, the exceptions thereto are overruled, and there must be

*Judgment on the verdict.*